4fc55278deba2466

Case 3:21-cv-10074-TLT   Document 72   Filed 09/23/22   Page 1 of 13

KATHRYN E. CAHOY (SBN 298777)
kcahoy@cov.com
MATTHEW Q. VERDIN (SBN 306713)
mverdin@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4735

ANDREW SOUKUP (*pro hac vice*)
asoukup@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000

*Attorneys for Defendants Hoffmann-La Roche Inc.,*
*Roche Laboratories Inc., Genentech, Inc.,*
*and Genentech USA, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN NELSON, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>F. HOFFMANN-LA ROCHE, INC.; ROCHE LABORATORIES, INC.; GENENTECH, INC.; GENENTECH USA, INC.; and DOES 1-100,<br><br>    Defendants. | Civil Case No.: 3:21-cv-10074-TLT<br><br>**DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO STAY DISCOVERY PENDING RESOLUTION OF MOTION TO DISMISS**<br><br>Hearing Date: November 15, 2022<br>Hearing Time: 2:00 p.m.<br><br>Honorable Trina L. Thompson |

DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO STAY DISCOVERY
PENDING RESOLUTION OF MOTION TO DISMISS
Case No.: 3:21-cv-10074-TRT

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER AND TO STAY
DISCOVERY PENDING RESOLUTION OF MOTION TO DISMISS.......................................1

STATEMENT OF RELIEF SOUGHT.............................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.      INTRODUCTION AND STATEMENT OF ISSUES ......................................................1

II.     BACKGROUND ...............................................................................................................3

        A.      Plaintiff's Claims. ................................................................................................3

        B.      Procedural History. ..............................................................................................5

III.    ARGUMENT .....................................................................................................................6

        A.      This Court Should Stay Discovery Pending A Ruling On Defendants' Motion
                To Dismiss. ...........................................................................................................6

        B.      A Temporary Stay Of Discovery Will Not Prejudice Plaintiff And Will
                Preserve The Parties' And Court's Resources. ....................................................9

IV.     CONCLUSION ................................................................................................................10

## NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER AND TO STAY DISCOVERY PENDING RESOLUTION OF MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on November 15, 2022, at 2:00 p.m., or as soon thereafter as available, in the courtroom of the Honorable Trina L. Thompson, located at 450 Golden Gate Avenue, Courtroom 9, 19th Floor, San Francisco, California 94102, Defendants Hoffmann-La Roche Inc. and Roche Laboratories Inc. (together "Roche"), and Genentech, Inc. and Genentech USA, Inc. (together, "Genentech"), will move for a protective order extending their time to respond to Plaintiff's discovery requests, and to stay further discovery, pending this Court's ruling on Defendants' motion to dismiss Plaintiff's Amended Complaint.  Pursuant to Federal Rule of Civil Procedure 26(c), Defendants' counsel certifies that they have met and conferred in good faith with Plaintiff's counsel in an effort to resolve the dispute without intervention by the Court, but were unable to resolve the dispute.[1]

## STATEMENT OF RELIEF SOUGHT

Defendants seek a protective order extending their time to respond to Plaintiff's discovery requests, and to stay further discovery, until 30 days after this Court enters an order (if any) denying Defendants' motion to dismiss Plaintiff's Amended Complaint.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND STATEMENT OF ISSUES

This is a case where Plaintiff seeks to hold Defendants liable for marketing a drug (Lariam) that Plaintiff never alleges he ingested.  Plaintiff seeks to hold Defendants liable under California's unique "innovator liability" theory, under which a brand-name manufacturer can be held liable under a

---

[1] Defendants are aware of this Court's standing order that requires discovery disputes to be submitted to the Court via a joint letter not to exceed five pages.  *See* Standing Order for Civil Cases, ¶ 21.  On September 15, after the parties had reached an impasse on the issue presented by this motion, Defendants emailed Plaintiff's counsel a draft of a joint letter that included Defendants' position, and they invited Plaintiff's counsel to add Plaintiff's position to the letter.  On September 21, Plaintiff's counsel informed Defendants' counsel that Plaintiff believed Paragraph 21 of the Court's standing order does not apply to this dispute.  To comply with the Court's order that "[d]iscovery disputes should be brought to the Court's attention as early as possible," *see id.*, Defendants have therefore filed this motion and noticed it for a hearing consistent with the procedures of Civil. L. R. 7-2 and the Court's Standing Order for Civil Cases ¶ 6.

negligence theory for harms allegedly caused by the ingestion of a generic competitor's medication. California stands virtually alone in the country in recognizing this theory of liability, and Plaintiff's claims require him to demonstrate that California law applies to this dispute.  Even though Plaintiff and his claims have almost no connection to California, Plaintiff filed this lawsuit here in an apparent attempt to maximize the chances that California law will apply to his claims.

Defendants filed a motion to dismiss Plaintiff's Amended Complaint, and that motion was fully briefed in April 2022 and remains pending.  Among other defenses, Defendants' motion explains why this Court lacks subject matter jurisdiction over this dispute and why the Amended Complaint fails to state a viable claim (including because California law does not apply to Plaintiff's claims).  If granted, Defendants' motion will dispose of this case in its entirety.

Five months after the parties had their Rule 26(f) conference, Plaintiff abruptly attempted to commence discovery by serving 348 sweeping discovery requests on Defendants—248 document requests and 100 interrogatories.  Soukup Decl. Exs. A–H.  Plaintiff did so even though they had previously asked Judge Gonzalez Rodgers (the judge previously assigned to this case) to enter a scheduling order and to allow discovery to proceed, and the Court did not do so.  If the Court grants Defendants' motion to dismiss, there will be no need to engage in the wide-ranging and burdensome discovery campaign that Plaintiff has commenced.

This Court should therefore enter an order extending the deadline to respond to Plaintiff's discovery requests, and to stay further discovery, until after this Court rules on Defendants' motion to dismiss.  Imposing costly and burdensome discovery on Defendants at this juncture would undermine the purpose of a motion to dismiss, which is "to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  Nor will Plaintiff suffer any prejudice from a temporary stay of discovery.  Plaintiff waited over a decade to bring this lawsuit, and more than five months after the Rule 26(f) conference to serve discovery.  He will not suffer any prejudice from another brief delay while this Court resolves Defendants' motion to dismiss.

## II.    BACKGROUND

### A.    Plaintiff's Claims.

This case challenges the U.S. military's use of mefloquine to protect its troops from malaria.  In 1989, Hoffmann-La Roche obtained FDA approval for Lariam, the brand name of mefloquine, an antimalarial medication initially developed, studied, and used by the military.  Dkt. 43 ("Am. Compl.") ¶¶ 18–20.  Lariam lost its U.S. patent protection in 2004, at which point multiple generic manufacturers began to sell generic mefloquine in the United States.  The last lots of Lariam were manufactured in 2005 and expired in 2008.  Roche's U.S. marketing authorization for Lariam was officially withdrawn in 2009. *See id*. ¶¶ 14–15, 24.  The FDA later officially determined that Lariam was "not withdrawn from sale for reasons of safety or effectiveness."  82 Fed. Reg. 19735, 19736-37 (Apr. 28, 2017).

Since its approval in 1989, the U.S. military has administered Lariam and (later) its generic equivalent mefloquine to its troops deployed to foreign territories where the prevalence of malaria could impact the troops' combat readiness.  The military continues to use mefloquine today.  Am. Compl. ¶ 29.  Indeed, the Centers for Disease Control and Prevention (CDC) advised the public as recently as 2020 that mefloquine is "[s]till [r]ecommended" and "will remain an important component of CDC's strategy to prevent malaria in travelers."  Dkt. 56-4 at 1.

Plaintiff John Nelson does not allege that he ever ingested Roche's product, Lariam.  Instead, he alleges that the military prescribed him generic mefloquine in 2008 and that he immediately began experiencing side effects.  Am. Compl. ¶¶ 71–73.  More than a decade later, Plaintiff filed this putative class-action lawsuit against Defendants, even though they had no involvement in the manufacturing or sale of generic mefloquine that he actually ingested.

The premise of Plaintiff's claims is that Defendants failed to adequately warn about the potential side effects of mefloquine.  *Id*. ¶ 1.  But Lariam has long carried a warning of the potential for certain neuropsychiatric side effects.  Although Plaintiff claims that he began experiencing certain symptoms, such as "suicidal ideation," "severe anxiety," "panic attacks," "paranoia," "insomnia," "vertigo," "loss of balance," and "depression" (*id*. ¶¶ 77, 80), the possibility those side effects could occur was prominently disclosed.  For example, at the time Plaintiff is alleged to have begun taking mefloquine,

Roche's physician's prescribing information for Lariam stated, in bold and under the prominent heading "**WARNINGS**":

> **Mefloquine may cause psychiatric symptoms in a number of patients, ranging from anxiety, paranoia, and depression to hallucinations and psychotic behavior. On occasions, these symptoms have been reported to continue long after mefloquine has been stopped. Rare cases of suicidal ideation and suicide have been reported though no relationship to drug administration has been confirmed. To minimize the chances of these adverse events, mefloquine should not be taken for prophylaxis in patients with active depression or with a recent history of depression, generalized anxiety disorder, psychosis, or schizophrenia or other major psychiatric disorders. Lariam should be used with caution in patients with a previous history of depression.**

Dkt. 56-2 at 4.  A "Medication Guide" required to be given to patients further stated, under the heading "**What is the most important information I should know about Lariam?**":

> **Lariam can rarely cause serious mental problems in some patients.** The most frequently reported side effects with Lariam, such as nausea, difficulty sleeping, and bad dreams are usually mild and do not cause people to stop taking the medicine. However, people taking Lariam occasionally experience severe anxiety, feelings that people are against them, hallucinations (seeing or hearing things that are not there, for example), depression, unusual behavior, or feeling disoriented. There have been reports that in some patients these side effects continue after Lariam is stopped. Some patients taking Lariam think about killing themselves, and there have been rare reports of suicides. It is not known whether Lariam was responsible for these suicides.

*Id.* at 13.  The Medication Guide included an informational wallet card for patients "to carry when you are taking Lariam," and both the Medication Guide and that wallet card warned patients "to contact a doctor or other health care provider" if they developed a "sudden onset" of side effects.  *Id.* at 13–14, 18.

Plaintiff nevertheless has asserted failure-to-warn, design defect, and misrepresentation claims. Am. Compl. ¶¶ 99–198.  He asserts these claims under California law, even though this case has almost no connection to California: Plaintiff is a Florida resident (*id.* ¶ 12) and the allegedly inadequate warnings in the medication's label occurred entirely in New Jersey, where Roche was headquartered when it developed and sold Lariam.  *Id.* ¶¶ 13–14, 21, 51–52.  Plaintiff hinges his choice of a California forum on the fact that Genentech is headquartered in California, but Genentech never developed,

manufactured, sold, marketed, or distributed Lariam or its generic equivalent to the military or otherwise.

### B.    Procedural History.

Defendants initially moved to dismiss Plaintiff's initial complaint, and Plaintiff responded by filing an Amended Complaint.  Dkts. 33, 43.  Defendants moved to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction and failure to state a claim.  Dkt. 54.  That motion was fully briefed as of April 28, 2022.  Dkts. 60, 62.  Although the motion was set for a June 21, 2022 hearing, Judge Gonzalez Rodgers cancelled that hearing.  Dkt. 69.  Defendants' motion remains pending.

Judge Gonzalez Rogers initially scheduled an initial case management conference.  Dkt. 22.  In connection with that conference, the parties submitted a joint case management statement.  Dkt. 52.  Plaintiff proposed that discovery begin following the parties' Rule 26(f) conference.  *Id.* at 8.  Defendants proposed that no discovery occur until this Court resolved its motion to dismiss, and instead proposed that the Court schedule a case management conference within thirty days of an order, if any, denying a motion to dismiss for the purpose of discussing a scheduling order.  *Id.* at 9–11.  As Defendants explained, the Court's ruling on Defendants' motion to dismiss may narrow or eliminate issues in this case and may make phasing of discovery on threshold issues that can be resolved with minimal discovery appropriate.  *Id.* at 10.

After receiving the parties' case management statement, and after Defendants filed their motion to dismiss three days later, Judge Gonzalez Rogers did not enter a scheduling order.  Judge Gonzalez Rogers also cancelled the initial case management conference.  Dkt. 58.

Although the parties' Rule 26(f) conference was held on March 23, 2022 (Dkt. 52 at 1–2), no discovery had occurred for more than five months after the Rule 26(f) conference.  This case was then re-assigned to this Court on August 29, 2022.  Dkt. 70.

On August 26, 2022, Plaintiff served 62 document requests and 25 interrogatories on each of the four defendants in this case.  Soukup Decl. Exs. A–H.  The discovery is sweeping in scope and would require substantial resources for the Defendants to respond.  For example, Plaintiff seeks:

- All "Documents" and "Internal Communications" spanning approximately three decades "relating to any analysis, assessment, evaluation, investigation, study, trial and/or testing relating to Mefloquine." *Id.* Exs. A–D at 8–9 (RFP Nos. 39, 42).

- All "Documents" and "Communications" (internally, with other defendants, and with the FDA) "relating to any analysis assessment, evaluation, investigation, study, trial and/or testing" by Roche or the FDA "prior to the approval of the New Drug Application for Mefloquine," which occurred in 1989, over 30 years ago. *Id.* Exs. A–D at 6–7 (RFP Nos. 14–17).

- All "Communications" internally, with other defendants, and with the FDA "prior to 1989" and "between 1989 and the present date" "relating to any potential or actual side effect of Mefloquine." *Id.* Exs. A–D at 9–10 (RFP Nos. 49–54).

- Identification of "any analysis, assessment, evaluation, investigation, study, trial and/or testing concerning Mefloquine" by Roche or the FDA "prior to the approval of the New Drug Application for Mefloquine" in 1989 and "after 1989." *Id.* Exs. E–H at 7–8 (ROG Nos. 8, 17).

- All "Documents" "supporting" or "contradicting" the allegations in the Amended Complaint, and "supporting" Defendants' response to the allegations in the Complaint. *Id.* Exs. A–D at 5 (RFP Nos. 1–3).

Defendants asked Plaintiff to agree to extend the deadline by which Defendants must respond to Plaintiff's discovery, and to stay further discovery, until after this Court ruled on Defendants' motion, but Plaintiff refused.

## III.   ARGUMENT

### A.   This Court Should Stay Discovery Pending A Ruling On Defendants' Motion To Dismiss.

"District courts have broad discretion to stay discovery pending the resolution of a potentially dispositive motion, including a motion to dismiss." *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007).  No discovery should occur pending resolution of Defendants' motion to dismiss, which has, among other grounds, challenged this Court's subject matter jurisdiction.

"Stays of discovery may be deemed warranted where," as here, "a motion to dismiss can resolve a threshold issue such as jurisdiction." *In re Lithium Ion Batteries Antitrust Litig.*, 2013 WL 2237887, at

*2 (N.D. Cal. May 21, 2013).  As explained in Defendants' motion, the political question doctrine deprives this Court of subject matter jurisdiction over Plaintiff's claims.  Dkt. 54 at 2.  That is because adjudicating Plaintiff's claims would require the Court to impermissibly second-guess the U.S. military's strategic choice of antimalarial drugs to safeguard service members stationed abroad against malaria, including the extent to which any additional warnings would have affected the military's antimalarial policies.[2]  Dkt. 54 at 8–14.  *See, e.g.*, *Cooper v. Tokyo Elec. Power Co.*, 990 F. Supp. 2d 1035, 1040–41 (S.D. Cal. 2013) (dismissing claims that would have required the court to find that but for the defendant's actions, "military commanders would have adopted a different course of action").

Until this threshold jurisdictional issue is resolved, Defendants "should not be required to participate in burdensome and costly discovery."  *Grand Canyon Skywalk Dev. LLC v. Steele*, 2014 WL 60216, at *4 (D. Nev. Jan. 7, 2014).  Courts routinely stay discovery in similar circumstances.  *See, e.g.*, *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993) (affirming stay of discovery pending resolution of challenge to subject matter jurisdiction); *Jeter v. President of the United States*, 670 F. App'x 493, 494 (9th Cir. 2016) (affirming stay of discovery pending motion to dismiss that "required resolution of jurisdictional issues"); *Camacho v. United States*, 2014 WL 12026059, at *5 (S.D. Cal. Aug. 15, 2014) (staying discovery pending resolution of challenge to subject matter jurisdiction); *Comm. for Immigrant Rts. of Sonoma Cnty.*, 2009 WL 10692620, at *3 (N.D. Cal. Apr. 20, 2009) (same); *Grand Canyon Skywalk*, 2014 WL 60216, at *4 (same).  The same approach should be taken here.

A discovery stay also is appropriate because Defendants' remaining arguments, if granted, will dispose of the entire case.  For example:

Government contractor defense.  The government contractor defense bars claims against suppliers of products to the military when, as here, the military supplier (Roche) warned the military about known dangers associated with the product that were unknown to the government.  Dkt. 54 at 14–

---

[2]   In fact, the initial version of Plaintiff's complaint asserted that additional warnings would not have made any difference:  he accused the military of following "mass prescribing protocols inconsistent with Roche's own prescribing protocols," which allegedly made it "impossible" to adhere to warnings in the first place.  Dkt. 1 ("Compl.") ¶¶ 47–50.

15.

  <u>California law does not apply</u>.  Despite not ingesting a product made by Defendants, Plaintiff asserts that he can trigger California law and its virtually singular application of "innovator liability," under which a brand-name manufacturer can be held liable under a negligence theory for harms allegedly caused by the ingestion of a generic competitor's medication.  There is no basis to apply California law here.  Roche's labeling decisions at the center of this dispute occurred outside of California.  And Plaintiff—a Florida resident who never lived in California—ingested generic mefloquine outside of California.  *Id.* at 15–18.  "The reach of California's lawmaking power in respect of its products liability policy is appropriately confined to the protection of California residents and persons injured within California's borders."  *Chen v. L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 503 (2019).

  <u>Statute of limitations defense</u>.  By waiting more than a decade to file this lawsuit after he allegedly immediately began experiencing the side effects that form the basis of his claims, Plaintiff's claims are barred by the two-year statute of limitations.  Dkt. 54 at 19–22; *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (statute of limitations begins to run when a plaintiff "injured by a product he believed to be safe has reason at least to suspect that [someone] has done something wrong").

  <u>Defendants' warnings were adequate</u>.  As further explained in Defendants' motion to dismiss, the labeling in effect when Plaintiff took mefloquine in 2008 "directly warned" "in plain and explicit terms about the risk of" the side effects Plaintiff allegedly suffered.  *Kearl v. Lederle Lab'ys*, 172 Cal. App. 3d 812, 834 (1985); Dkt. 54 at 24–27.

  These additional arguments independently justify a stay because Defendants' motion is fully briefed and the Court "only needs to look at the pleadings" to rule on these and other defenses. *Cellwitch, Inc. v. Tile, Inc.*, 2019 WL 5394848, at *1–2 (N.D. Cal. Oct. 22, 2019) (staying discovery pending resolution of potentially dispositive motion to dismiss for failure to state a claim that can be decided without additional discovery); *In re Nexus 6P Prod. Liab. Litig.*, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017) (staying discovery when "the pending motions to dismiss are fully briefed, and can be decided without additional discovery").

**B.     A Temporary Stay Of Discovery Will Not Prejudice Plaintiff And Will Preserve The Parties' And Court's Resources.**

The limited stay of discovery that Defendants propose would conserve the parties' and the Court's resources and result in no prejudice to Plaintiff.

This case is at an early stage and no scheduling order has been issued.  Defendants have instituted appropriate litigation holds, and so this is not a case where there is a risk of losing evidence if discovery does not begin immediately.  *See Aleisa v. Square, Inc.*, 493 F. Supp. 3d 806, 817 (N.D. Cal. 2020) (no prejudice from stay because preservation obligations address risk of lost evidence). Moreover, Plaintiff waited to bring this lawsuit for more than a decade after the alleged injury that forms the basis of his claims.  Am. Compl. ¶¶ 71–73.  Plaintiff then waited another five months after the parties' Rule 26(f) conference to serve any discovery in the first instance.  Dkt. 52 at 1–2; Soukup Decl. ¶¶ 2–9.  Given that Plaintiff has demonstrated that he is in no hurry to pursue his claims, it is not plausible that another brief delay to commence discovery until the Court resolves Defendants' motion would be prejudicial.  *See SCA Hygiene Prods. Aktiebolag ("AB") v. Tarzana Enters.*, LLC, 2017 WL 5952166, at *5 (C.D. Cal. Sept. 27, 2017) (no undue prejudice from stay "[s]eeing as how [plaintiff] delayed in bringing this action in the first place").

Defendants, by contrast, will suffer significant prejudice if required to begin costly and time-consuming discovery.  "[C]lass action discovery can be an expensive and burdensome process."  *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 624 (N.D. Cal. 2013).  And that burden is typically one-sided.  As the Ninth Circuit explained, "class action plaintiffs typically possess no or very limited discoverable materials, while defendants may have reams of documents and terabytes of electronic data. Class action plaintiffs thus have an incentive to seek aggressive discovery (and log a tremendous number of hours in the process) without fear of reciprocally burdensome discovery."  *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 666 (9th Cir. 2020).  This case is no exception.  Defendants will bear the brunt of the burden in discovery, as evidenced by the 348 sweeping discovery requests Plaintiff served on Defendants.  Through these requests, Plaintiff seeks to inflict on Defendants the burden of collecting, reviewing, and producing documents, and responding to interrogatories seeking information spanning more than three decades.  Soukup Decl. Exs. A–H.  It is clear that Plaintiff's overbroad and

disproportionate requests will result in expensive discovery and motion practice, and Defendants should not be burdened with that expense in the event that this Court grants Defendants' motion.

Staying discovery until the Court resolves Defendants' motion to dismiss will conserve the parties' resources.  Even if only some of Plaintiff's claims were dismissed, staying discovery until then "allows all parties to commence discovery with a better understanding of which claims, if any, they must answer." *Nexus 6P*, 2017 WL 3581188, at *2.  It will also conserve the resources of the Court, which will inevitably be called upon to resolve discovery disputes given the overbroad nature of Plaintiff's discovery requests.  *See Zeiger v. Hotel California by the Sea LLC*, 2022 WL 1499670, at *3 (W.D. Wash. May 12, 2022) (staying discovery, in part, because it "will also prevent the Court from expending judicial resources involving potential discovery disputes which may not be relevant" if the pending motion is granted).

## IV.    CONCLUSION

This Court should enter an order that extends the deadline by which Defendants must respond to Plaintiff's discovery requests, and that stays further discovery, until 30 days after this Court enters an order (if any) denying Defendants' motion to dismiss.

DATED:  September 23, 2022

COVINGTON & BURLING LLP

By:  */s/ Andrew Soukup*

KATHRYN E. CAHOY (SBN 298777)
kcahoy@cov.com
MATTHEW Q. VERDIN (SBN 306713)
mverdin@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4735

ANDREW SOUKUP (*pro hac vice*)
asoukup@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000

*Attorneys for Defendants Hoffmann-La Roche Inc., Roche Laboratories Inc., Genentech, Inc., and Genentech USA, Inc.*